And Kathy Samwise for the Appellant London. I'd like to reserve about three minutes for rebuttal. And I would like to point out that this case is a little bit of a shift in paradigm from the other cases that the Court has heard this morning. You don't think the title company committed a CIMT? Okay. Civil cases, and I don't even know what that is, Your Honor. It's a crime involving moral turpitude. No moral turpitude. However, there is an issue of fact. I have a question, though, right at the beginning. Your client is an LLC, right? Yes. So it's a citizen of every state in which its members are citizens. So what are those states? Correct. Well, I think we submitted a statement showing that there was complete diversity. Okay. That's what I saw. Yes. I believe that the members of the LLC, including the additional LLC members, when you drill down, I think that they are all Arizona citizens. This is a DE-37, I think. The other party is Texas. What we're going to have to do is have the pleadings amended to show diversity. I know that's sort of a pain for lawyers to worry about it, but it's the only thing that gives us power to decide cases. And rather than have the Supreme Court tell us, I think we'll have you amend the pleadings to show the diversity, which, under the submissions, it does exist. Well, thank you, Your Honor. I would like to point out that, actually, this case was brought by my client in state court, in Maricopa County Superior Court. And so the defendants removed it to Federal court. We would, of course, be more than pleased if this court were to find that the judgment against our client was void for lack of subject matter jurisdiction. But we weren't. You know, when we were asked a couple of weeks ago to submit a statement on diversity and subject matter jurisdiction, we simply were not able to find anything to defeat complete diversity. So I believe it is there. Once you get to that, though, it seems to me your case rises and falls on the issue of whether the title policy was ambiguous. Isn't that a fair statement? If it wasn't ambiguous, then none of the other points that you make really get there. Not exactly, Your Honor. With all due respect, this case is brought under Arizona law, which is very, very different from other States. If you look at the State Farm case and the Darner Motor case, they don't require ambiguity. So starting first with State Farm, that case requires, that's an Arizona Supreme Court case that requires that the trial court, in this case the district court, look at the evidence offered to it and determine first whether that evidence is reasonably susceptible to the interpretation proffered by that party. And that's whether or not there is an ambiguity. And that's something that's really distinctive about Arizona law. If the interpretation is reasonably susceptible, then that evidence is admissible notwithstanding the old traditional parole evidence rule. And I would like to point this Court's attention to the Morgan case, which is the Arizona Supreme Court, a question of Arizona law on the interpretation and the application of the reasonable expectations doctrine as to insurance contracts. It's important because this Court pointed out that the Arizona Supreme Court, quote, advises us to consider the format and clarity of insurance policies in considering the doctrine of reasonable expectations. And then this Court cited, specifically cited to the Darner-Motor case. And that's in a really important case in Arizona. It has been cited. I was recently looking at it. It was cited 130 times under Arizona law. And that looks at the reasonable expectations of the insured. And it's important because sometimes what might appear to be unambiguous to you or me, to you as a judge, to a title lawyer, to a title company, is not necessarily unambiguous to the insured. That's why Arizona, back in 1984, determined that we would look at what are the reasonable expectations of the insured. And so, sure, we look at what are the party's intentions. What case is that that says you look to the reasonable expectations of the insured? That's Darner-Motor. And it is cited at length in our briefs. Would the Court like the citation? I remember the case. I just didn't hear you right on it. I'm sorry. And so that case says that we look at not just the language, but what are the surrounding circumstances to see what were, in this case, London's expectations. But also, in this particular case, we have evidence of the drafter's interpretation based upon the drafter's behavior in this case. But that was after the policy was issued, right? And there's no evidence that the drafter is saying what he intended at the time the policy was issued. Is that correct? That's correct, because this matter was resolved early on in the case on summary judgment, Your Honor. The motion was issued. But why does that enter into our consideration? Well, I mean, I don't necessarily think that it would. What the drafter thought when it drafted the policy may or may not be relevant. But what's interesting about that is that we actually have evidence of that, because the policy was actually signed by Paul McNutt, who is a major witness in this case. Based upon the Rule 60 motion, Mr. McNutt signed the policy. He is the executive vice president. He's counsel, in-house counsel for this insurance company. And he gave his interpretation a little bit after summary judgment, but that was because we, my client, did not have access to his interpretation. But his interpretation of this provision is that, quote, London may still be insured. But again, help me with this, because I realize the other gentleman has this unusual rule. You still have a lot of cases, First American Title v. Action Acquisitions, Taylor v. State Farm Mutual Auto Insurance Company, and so on, that are more like the traditional ambiguity rules. What gets construed in what way? First American talks about we interpret it looking at legislative goals, social policy, or the transaction as a whole. Title insurance is a really common situation. These policies, they've just been around forever and ever. You've got the special warranty deed in Arizona. There's lots of cases on that. And as an old real property lawyer, I mean, I look at this case and it seems pretty straight up to me. I don't get how there was a reasonable expectation that was different than what the policy says. So will you help me as to how Arizona's special rule that you referred to in terms of the reasonable expectations gets construed in terms of what is obviously long custom and practice in the industry? How does that have any bearing, if it does? Well, when you look at this particular provision, retains an estate or interest in, and, you know, the district court made its decision based upon Title 29, what an interest is in a limited liability company. Right. And that's kind of interesting because even, you know, when you in retrospect look at her decision, it's not contrary to our client's interpretation because under Title 29, a member has a personal property interest in the limited liability company and also is entitled to a distribution of its assets. But it has no right in the property owned by the LLC. And that's true in virtually every state in the country. But what does that mean? This provision says estate or interest in the property. It doesn't say a legal interest. Well, but maybe let me ask you to do it this way. So far as I know, in every state in the union, if you have an LLC or an LLP or anything like that, you have the members or partners have a personal property interest. They do not have a right in a specific asset owned by the entity. Can you show me any case in Arizona that shows that an owner, a member of an LLC, has a personal right in the real property owned by the LLC? I think you'll find there is no such case. That's actually accurate, and I have looked for it. There's no case, though, the other side of that is that there's no case in Arizona really interpreting exactly what the member's interest is in the assets owned by the limited liability company. Well, that's what I'm talking about. I mean, it is you look at the drafts people, all these statutes, and most of them are fairly common throughout the country. And you look at the bankruptcy cases. That's where you're going to mainly find this. There's just no authority for the concept that a member of an LLC has a personal right in an asset owned by the entity. It has a personal ownership interest in the entity, but not what the entity owns. But there's nothing in this policy that defines what the insurer meant by a state or interest in the land. It's very ---- Well, I would disagree with you there, but let's just say for a moment you're correct. Based upon the standard that you've indicated, it's what the reasonable expectation of the insured was. Do you have any evidence that was presented to the court that suggests that the ---- your client believed that as an owner of an LLC that it had a personal interest in the real property involved here? Well, that was ---- there was never any drill down on that, of course, Your Honor. And that's the issue. Because there was no discovery. We do have our client's multiple affidavits stating that she ---- That's self-serving stuff. So is Mr. ---- But is there anything that was presented to the district court that shows that at the time the policy was issued that your client believed with reason that as an owner of an LLC that it had an interest, an insurable interest under the policy in the real property owned by the LLC? Well, we have, as you say, our client's self-serving affidavit, which was the only thing at that point that she could submit. But we also ---- we have her contemporaneous conduct. We have inferences we can make from that. Why would Ms. London have transferred the property to a wholly owned subsidiary thinking we're just going to ---- And that's not the property when it was sold in a subdivision or whatever else. She wanted to put a degree of separation from her original entity. Very common approach. Don't blame her a bit for that. But that doesn't really deal with the issue of whether her reasonable expectation was that by doing so that her entity would have a personal interest in the real estate owned by the LLC that she created. Well, I would answer that a couple ways. One is that, again, there's nothing specifically in the policy that requires it be a personal interest. It's a vague term, interest. Do we mean indirect interest? Do we mean equitable interest, legal interest? But, again, why would she have done that knowing she was going to lose title insurance, but for her understanding, which is reasonable, and again, we're on summary judgment, reasonable inferences to be drawn in favor of the nonmoving party. Again, the inference is, why would she subject her company to losing title insurance when she could have presumably done something different? But the other thing that we have, though, Your Honor, is for you. Before you get on to the next point, can I just slip in one question? You indicated that in the insurance policy there's no definition of an interest in land, in the land as to what that means. Now, in Schedule A of the policy, it says, it states that an estate or interest in the land equals fee simple title. That is, that indicates to me that the interest is the interest in the land. It's an estate land. It's fee simple. Not an economic interest. That's correct, but when you look then at this Provision 2B and look at all the words that we're looking to interpret, and we interpret them all together, which under Arizona law no words are to be deemed superfluous, you look at the coverage shall continue in force in favor of an insured so long as such insured retains an estate or interest in the land. And so as long as they have the fee simple title, not an economic interest, but a fee simple title. And that's where I'm having a problem with your argument. It seems that Schedule A is in opposition to what you've been asserting. So I wanted to give you a chance to tell me about that. Well, I would like to point out some other pieces of evidence, though, that were  So I'm going to give you a minute to respond. If you may want to do, you're out of time. We'll give you a minute to respond. But in addition to thinking about what Judge Wallace said, would you also indicate how your construction of an interest would square with Section 2A, which deals with a lender and how that would work? Thank you. Yes. Please be. Mr. Timmerman. Henry Timmerman for Applely. Still good morning in California. In this case, the district court applied uncontested facts to policy provisions that have been around for over 30 years. I've cited the cases that go back to 1972, the policy was issued. Those policies have been around a long time, and there's a lot of cases. Is this an ALTA owner's policy? Yes, it is. Okay. And if you checked on the ALTA website, you'd find there have been variations of that policy over the years, but these provisions remained unchanged, I think, until 2006. Well, after this, there were some minor changes. So we're talking about definition of insured, continuation of insurance provision. As Your Honor mentioned, it's pretty common knowledge that in the title business, you buy a policy at a point in time that insures that owner while they own it, in effect. There is a cutoff when a new buyer steps in. The new buyer buys a new policy. Otherwise, title insurance would go on forever. You pay an insurance premium on day one, and if you own the property for one month or 50 years, it's going to follow you. But if you sell it, the buyer buys new title insurance. And in this case, Florence Ventures, the new buyer, a stranger to the original transaction, did not buy title insurance. And that's, in effect, what brought us here. The claim was filed after Florence Ventures. Just so I can be sure, that deeding to Florence Ventures was in fee simple? It was fee simple. A hundred percent of the property, every iota of property. For example, if they'd only transferred 50 percent, then London Land would still have some interest. They didn't. They deeded everything. Everything was gone as of 2005. The claim filed in 2007. And under Arizona law, a special warranty deed is a very limited warranty, just that you own the fee or whatever the interest was that was transferred. You're not making a lot of other warranties. Yeah, you're only warranting during the time you owned it. And that's why people use it. I mean, you don't see a lot. It's the equivalent of a quitclaim deed with a little twist, right? A little twist. People don't use general warranty deeds much because they don't want to be warranting things before their ownership, which is why you didn't see it here and rarely you see it in case law. You just don't. It's not the smart thing to do. Now, granted, if you used a warranty deed here, there might have been some coverage. But the fact remains is people don't want to be in the middle of litigation. And that's why they deed by special warranty. A special warranty deed says, in this case, we're dealing with a fee simple absolute. So what you're saying is I grant or warrant that I own this property in fee simple absolute end of warranty. Yeah, and that I didn't do anything while I owned it that messed up your title. Right, exactly. That's exactly right. This was all briefed to the trial judge. And I'll point out a couple things because they like to harp now on Darner and Taylor. If you go back and look at the briefs, their brief, when we filed our second motion for summary judgment, the words Darner is not cited by them at all, Taylor is not cited by them at all. They don't request Rule 56 relief, give us some time for discovery. What they do is they submit affidavits and say, wait a minute, somehow we get coverage under this set of facts. Now, even though they didn't raise Darner and even though they didn't raise Taylor, the fact remains is if you look at those cases, all they do in Arizona is kind of expand the parole evidence rule. And they allow a judge to kind of look beyond the language. But the trial judge in our case allowed all those affidavits. Whether they were good, bad, or indifferent, the trial judge looked at everything. And so under the Darner test and the Taylor test, they got all that stuff in. And the trial court still said, you know what, you lose. To me, it's not a close case. There's a lot of authority here that lays out this basic concept of title insurance. Title companies have been doing this for years. Otherwise, you can't set premiums. You don't know how to set premiums. Life insurance companies set them based on how long people are going to live. Title companies set them based on how long people are likely to own property. If title insurance stayed in effect through every transfer, my goodness, think what you would pay for a policy. So we submit the summary judgment. The test is de novo, but there's plenty of case law to support that. They haven't talked about the Rule 60. I'll simply point out that under the Rule 60, they start talking about Darner and Taylor for the first time, but it's kind of too late. And basically what the trial judge did is took the very standard that the appellant gave to the judge. Here's the standard for Rule 60. The judge said, okay, that's the standard. I'll give you the benefit of the first two parts of the test. I won't even go into it. But in the third part, you lose. I mean, you haven't shown anything to me that would change my decision on the merits. You know, all they're talking about. So from your perspective, the petitioner, the appellant, got all the benefit of Darner and Taylor. Everything they could possibly put on was considered and the trial judge still went forward with the ruling that he made. On the summary judgment, yes. And on the Rule 60, which is an abuse of discretion, I mean, bear in mind what they're trying to argue. They're trying to argue that a cold call to somebody at the title company where they give somebody a deed and the policy and the guy says, I don't know of any endorsement for you. You're about two years too late. And maybe you should go talk to your lawyer about whether you got coverage. You know, there's no way a person in that position could even make a determination on coverage. You would have to go look at the Arizona limited liability statutes. You would have to go look at cases in Arizona regarding a retained interest. I mean, you just, you can't make these decisions in a vacuum. He was trying to be kind to a customer who, by the way, didn't say, hey, you know, don't make your decision. We've already sued you and there's already a decision against us. So. Are you talking about the McNutt issue? Say again? McNutt? Is that what you're talking about? McNutt is a gentleman that works in the title company office in Texas, and he's the one that wrote the emails. But, again, you can't make a coverage decision based upon what he had, and he wasn't attempting to do it. He simply said, talk to your lawyer. Is there any evidence that when McNutt made this decision, is there any evidence that he made this decision before the summary judgment? Oh, no. He had he knew absolutely nothing about this. These cases are assigned off to claims people on staff that I dealt with who happened to be on vacation when they called. He doesn't do that. I just ask, is there any evidence? No, there's no evidence. And, actually, his affidavit says that I knew nothing about this claim, I knew nothing about the lawsuit, I'd made no determination in advance, and I couldn't have made it because I didn't have all the facts. How did the case get to a magistrate judge? By stipulation? In Arizona, they sent him to a magistrate, and if either party objects, it can go to a judge. But no one objected here. Interesting rule. It is. But you know what? I like to think, I mean, I know the background of this particular magistrate. I think they all aspire to the bench. But they're all wonderful people. I'm not saying that. But what we're talking about is Article 3. Yeah, exactly. The old Article 3 point. Both parties agreed that this magistrate would hear the court as if she were. Okay. So that answers Judge Walz's question. It isn't that there's a local rule. That's what happens. But once you got there, everybody stipulated. Everybody. That's right. That's a different. That's different. That's the Article 3 issue. Okay. Got to me because. Unless there's any other questions, I basically say that as a matter of law, the summary judgment's not a close case. There's no abuse of discretion by the trial judge slash magistrate. Thank you very much. Okay. Thank you. We'll give you a minute to respond. Thank you, Judge. First, to Mr. Timmerman's point that the transfer was to a stranger. It obviously was not. It was to a wholly owned subsidiary. But addressing the court's. Does that matter? It does, Your Honor. Why? Because when we look then at this Exhibit A, Schedule A to the policy, the fee simple is a description of the type of estate or interest in the land. So it's fee simple as opposed to a life estate or as opposed to any other type of estate. It is fee simple. However, that doesn't mean that that's the definition of retains an estate or interest because. Well, if you're correct, why could not the interest of London in the LLC have been transferred to one of my law clerks, for example, and then by them on to somebody else? And by your definition, the policy would continue to be in force. Because your law clerk is a stranger to London. That's why. They're very nice people, by the way. I'm sure they're very nice people. And so they'll excuse my saying that they're a stranger. However, Florence Ventures is explicitly not a stranger to London because London is the only member of Florence Ventures. And so whatever interest London has in Florence Ventures, and I see where I'm almost out of time again. You are, but it's. And I need to keep resetting it. And then the only other thing I would like to point out, Your Honor, is that Mr. McNutt's interpretation of the policy shows that it's a reasonable interpretation, and he held this interpretation presumably before summary judgment, but we never had access to it. So, again, I would ask that the Court reverse summary judgment. We commend you for your creative lawyering. And we thank you all for your argument. And the London Land Company v. Title Resources Guarantee Company is submitted, and the Court will stand adjourned for the day.
judges: Rakoff, Wallace, Smith